**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| ANGELA JONES, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. CJC-25-1953 |
| FRANK BISIGNANO, COMMISSIONER OF SOCIAL SECURITY, | * * | |
| Defendant. | * | |

**MEMORANDUM OPINION**

Plaintiff/Claimant Angela Jones petitions this Court to review the Commissioner of the Social Security Administration's (the "Commissioner") final decision involving her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"). ECF No. 1. The Court has considered the record and the parties' briefs. ECF Nos. 8, 11, 13. No hearing is necessary. Loc. R. 105.6 (D. Md. 2025). For the reasons that follow, the Court reverses and remands this case for further proceedings.

**PROCEDURAL BACKGROUND**

On July 21, 2021, Jones applied for DIB and SSI under Titles II and XVI of the Social Security Act, respectively. R. 246–49. In her application, Jones alleged she became disabled on June 30, 2019. R. 246, 248. Her claims were denied initially and on reconsideration. R. 153–67. On Jones's request, an Administrative Law Judge (ALJ) held a hearing to review her claims. R. 41–77, 174. Following the hearing, the ALJ issued a decision on August 22, 2024, in which the ALJ found that Jones was not disabled. R. 14–33. Jones requested that the Social Security Appeals Council review the ALJ's decision. R. 5–6. On April 21, 2025, the Appeals Council

denied Jones's request for review, rendering the ALJ's decision the final, reviewable decision of the Social Security Administration. R. 1–3. Jones then timely petitioned for judicial review in this Court on June 18, 2025. ECF No. 1.

## THE ALJ'S DECISION

A claimant is legally disabled under the Social Security Act if they are unable "to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a) (DIB); 20 C.F.R. § 416.905(a) (same for SSI). The ALJ must conduct a five-step sequential evaluation to determine if a claimant is disabled. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). "For the first four steps, the burden lies with the claimant; at step five, it shifts to the Commissioner." *Thomas v. Berryhill*, 916 F.3d 307, 310 (4th Cir. 2019), *as amended* (Feb. 22, 2019). The ALJ reviews whether the claimant "(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." *Hancock*, 667 F.3d at 472. Prior to steps four and five, the ALJ must determine a claimant's Residual Functional Capacity ("RFC"), which is the most work a claimant can do despite their physical and mental limitations. *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 254 (4th Cir. 2017).

The ALJ here conducted the sequential evaluation as follows. At step one, the ALJ determined that Jones had "not engaged in substantial gainful activity since June 30, 2019, the alleged onset date." R. 19. At step two, the ALJ found that Jones had the following severe impairments: "arthritis, bilateral hands; anxiety disorder; hemolytic anemias; inflammatory

arthritis; depression; obesity, post traumatic stress disorder." R. 20. At step three, the ALJ

determined that Jones did not "have an impairment or combination of impairments that meets or

medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P,

Appendix 1." R. 21. The ALJ further determined that Jones had the RFC to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except lifting
> 20lbs occasionally and 10lbs frequently; carrying 20lbs occasionally and 10lbs
> frequently; sitting for 6hrs, standing for 6hrs, walking for 6hrs; push/pull as much
> as can lift/carry. Mental Limitations: Understand, Remember & Carryout
> Instructions: Is able to as follows - able to perform simple, routine tasks for periods
> of 2 hours at a time before needing a break. Unable to perform high quota
> production rate tasks where workers must meet strict, hourly quotas.; Use
> Judgment: Is able to perform simple work-related decisions; Is able to interact with
> the Public: Occasional; Dealing with changes in Work Setting: Is able to tolerate
> few changes in a routine work setting defined as is able to adapt to changes in the
> work environment and travel to a familiar location. The claimant's time off task
> can be accommodated by normal breaks.

R. 24–25. At step four, the ALJ determined that Jones did not have any past relevant work. R.

31. At step five, the ALJ found that, considering Jones's "age, education, work experience, and

[RFC], there are jobs that exist in significant numbers in the national economy that [Jones] can

perform." R. 31. As a result, the ALJ concluded that Jones was not disabled. R. 32.

## STANDARD OF REVIEW

The Court will affirm the ALJ's decision if the ALJ's factual findings are "supported by

substantial evidence and were reached through application of the correct legal standard." *Shelley*

*C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341, 353 (4th Cir. 2023) (citation omitted); 42 U.S.C.

§ 405(g). An ALJ's decision satisfies the substantial evidence standard if it contains "such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citation omitted). In conducting this review, the

Court determines "not just 'whether the ALJ examined all relevant evidence' but also whether

the ALJ 'offered a sufficient rationale in crediting certain evidence and discrediting other

evidence.'" *Drumgold v. Comm'r of Soc. Sec.*, 144 F.4th 596, 605 (4th Cir. 2025) (citation omitted).

**DISCUSSION**

Jones contends that the ALJ erred because the ALJ erroneously assessed Jones's RFC, erroneously analyzed step three of the sequential evaluation process, and erroneously evaluated Jones's subjective complaints. ECF No. 11 at 3, 19, 22. As to Jones's first contention, she argues that the ALJ erroneously assessed her RFC for several reasons: the ALJ failed to incorporate the opinions of the state agency physicians in the RFC, the ALJ failed to include an RFC limitation for Jones's hand arthritis, the ALJ failed to accommodate Jones's moderate limitation in adapting and managing oneself, the ALJ failed to analyze Jones's ability to work for a full workday, the ALJ erroneously evaluated the persuasiveness of certain medical opinions, and the ALJ failed to address Jones's absenteeism. ECF No. 11 at 5–19. Because the Court agrees that the ALJ erred in evaluating the persuasiveness of several medical opinions, Jones's remaining arguments need not be addressed.

An ALJ must assess the persuasiveness of medical opinions given by medical sources in the record. 20 C.F.R. §§ 404.1520c(a), 416.920c(a); *Lauren P. v. Dudek*, Civil Action No. SAG-24-0480, 2025 WL 754522, at *3 (D. Md. Mar. 10, 2025). The "most important factors" the ALJ considers when evaluating a medical opinion are supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Indeed, the ALJ is "required by rule" to explain how they considered the supportability and consistency factors in their opinion. *Drumgold*, 144 F.4th at 605; 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).[1] "Supportability is the degree to which a

---

[1] The ALJ also may, but is not required to, explain how they considered the other factors of relationship with the claimant, the specialization of the medical source, and miscellaneous factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

provider supports their opinion with relevant, objective medical evidence and explanation, and consistency is the degree to which a provider's opinion is consistent with the evidence of other medical and non-medical sources in the record." *Oakes v. Kijakazi*, 70 F.4th 207, 212 (4th Cir. 2023). In other words, when evaluating supportability, an ALJ must look within the opinion to determine its persuasiveness; conversely, when evaluating consistency, an ALJ must look outward by determining whether the opinion aligns with other evidence in the record. *See Joyce C. v. Bisignano*, Civil Action No. DRM-25-0076, 2026 WL 458564, at *3 (D. Md. Feb. 18, 2026). The ALJ must support their evaluation by citing to "specific objective evidence" in the record. *Shelley*, 61 F.4th at 358.

Jones argues that the ALJ failed to evaluate the supportability of the medical opinions of Dr. Lisa Heidelmaier, Dr. Anuradha Reddy, and Dr. Daniel Arnheim. ECF No. 11 at 17–18. The Court addresses each opinion in turn.

The ALJ evaluated the medical opinion of Dr. Heidelmaier as follows:

Dr. Lisa Heidelmaier saw [Jones] for a consultative examination in March 2020. [Jones] drove herself to the appointment and she arrived without assistive device. [Jones] reported that she suffers from anxiety but had no mental health treatment in the past 10 years. She reported that she worked as a nursing assistant and was fired from her job for missing days. She scored 27/30 on the MMSE. There was no evidence of psychomotor agitation. She denied any auditory or visual delusions. She said that her memory was worse when under stress. [Jones] reported that she spends the day, watching television, on the internet and cleaning. She is able to cook, clean, grocery shop and perform personal care independently. She manages her own funds. Dr. Heidelmaier found no limitations in remote memory with mild to moderate limitations in recent memory. She had mild limitations in her ability to put forth sustained concentration and persistence. She had mild limitations in social interactions and she had a poor ability to adapt as she had not followed up on medical treatment. [Jones] had marked limitations about leaving the house (Ex. 6F). *The assessment is persuasive except the finding of marked impairment is not consistent with the record. [Jones's] ability to attend the appointment unaccompanied, driving herself, is consistent with no more than moderate limitations. Additionally, an investigative report[] shows [Jones] leaving her home alone and driving by herself* (Ex. 35F).

R. 29–30 (emphasis added). Thus, the ALJ found that Dr. Heidelmaier's opinion that Jones had a marked impairment in adapting and managing herself was unsupported and inconsistent with the evidence. R. 29–30.

The ALJ did not err in evaluating supportability here. In her psychological evaluation, Dr. Heidelmaier opined that Jones had a marked limitation in adapting and managing herself because "she has not followed up on necessary medical treatment due to anxiety about leaving the house." R. 421. The ALJ found that Dr. Heidelmaier's opinion was unsupported because Jones's ability to drive herself to a psychological evaluation demonstrated that she could follow up on medical treatment and thus was only moderately limited in adapting and managing herself. Accordingly, because the ALJ discounted the supportability of Dr. Heidelmaier's opinion by questioning the evidence on which it was based, the ALJ's evaluation is supported by substantial evidence and was not erroneous.

Next, the ALJ evaluated the medical opinion of Dr. Reddy:

Dr. Anuradha Reddy saw [Jones] for a consultative examination in February 2023. [Jones] complained of morning stiffness lasting 3 hours. She also complained of pain in the hands, wrists, hips, knees[,] ankles and lower back. She complained of difficulty driving and an inability to use her hands, and reach overhead. She complained of severe anxiety and depression. [Jones] walked with a limp, using a cane. In [her] hands [Jones] had flexion contracture present. She had decreased range of motion in the left shoulder. Upper extremity strength was 4/5 on the left and 4/5 on the right. Lateral flexion of the cervical spine was to 45 degrees. Hip forward flexion was to 100 degrees right and 100 degrees left. Straight leg raising was 60 degrees on the left and 60 degrees on the right. Lower extremity strength was 4/5 on the right and left. Dr. Reddy diagnosed [Jones] with anxiety disorder, hypertension, depression, asthma, bilateral knee arthritis, lumbar spine degenerative joint disease, juvenile rheumatoid arthritis and bilateral wrist and hips degenerative joint disease. In terms of limitations, Dr. Reddy opined that [Jones] was unable to squat, tiptoe, push/pull, or stand for too long. [Jones] had difficulty getting on and off the examination table with no sensory or motor loss (Ex. 30F). *The assessment offers specific workplace limitations and the limitations indicated are inconsistent with an investigative report performed in March 2023 and are therefore not persuasive. The CDI report shows that [Jones] walked unassisted and drove on her own unaccompanied. [Jones] walked without [an] assistive device*

> *alone approximately 25 to 40 yards to her vehicle in a fluid motion with normal gait. [Jones] was noted to reach overhead with her right arm and walk up onto her porch unassisted* (Ex. 35F).

R. 30 (emphasis added). Thus, the ALJ appears to have found that Dr. Reddy's opinion was both unsupported and inconsistent with the evidence because the opinion conflicted with an investigative report by a Cooperative Disability Investigations Unit of the Social Security Administration (the "CDI Report"). R. 30.[2]

The ALJ erred in evaluating the supportability of Dr. Reddy's opinion because the ALJ did not, in fact, discuss the supportability of the opinion. At no point in this evaluation did the ALJ analyze the explanations, data, or other objective medical evidence that may have supported Dr. Reddy's detailed conclusion. Additionally, to the extent the ALJ may have attempted to package his consistency analysis as a supportability analysis, this was itself error. *Joyce C.*, 2026 WL 458564, at *3 ("[S]upportability must be considered independently from consistency."). Accordingly, the ALJ erred because the ALJ failed to independently assess the supportability of Dr. Reddy's opinion.[3]

---

[2] CDI Units investigate allegations of disability fraud when a disability claim is pending. Soc. Sec. Admin., Program Operations Manual System HA 01130.001(A)–(B). Once a CDI Unit is informed of alleged fraud, it investigates the allegations and issues a report on its findings. Soc. Sec. Admin., Program Operations Manual System DI 33025.036(C). The report "helps to evaluate the truthfulness, consistency, validity, and supportability of an individual's statements," and an ALJ may consider the report "in the disability determination process along with all other evidence in file." *Id.*

[3] Jones also contends that the ALJ's finding that Dr. Reddy's opinion is inconsistent with the record is not supported by substantial evidence. ECF No. 11 at 18. In particular, Jones argues that the ALJ's consistency finding fails to recognize the fluctuating nature of Jones's physical symptoms. *Id.* The Court disagrees. A review of the ALJ's opinion reveals that the ALJ considered Jones's reports in which she described how her physical symptoms varied. *See* R. 25–26 (discussing how, for instance, Jones reported that her hand use was limited but that she could "lift a jug of milk"). The ALJ, however, found many of Jones's physical symptoms, including the symptoms stated in Dr. Reddy's opinion, inconsistent with the CDI Report in which Jones was seen walking to and from her car and driving to and from a consultative examination unassisted. R. 5616–17; *see, e.g.*, R. 29 (finding Jones had "full use of her hands with some limitation due to

Finally, the ALJ evaluated the opinion of Dr. Arnheim:

Dr. Daniel Arnheim saw [Jones] for a consultative examination in February 2023. [Jones] reported that she was in special classes in school but went on to obtain a certificate in nursing. She lives with her children who help her a lot. [Jones] walked unassisted and was attentive, staying on task. Her hands were tremulous when she attempted to perform written or manual tasks. She was able to perform a simple concrete one step printed instruction that she read to herself. [Jones] rated her anxiety and depression as a 9 out of 10. She denied mood swings and her affect was appropriate. She said that she was unable to perform activities of daily living. She said that she had no contact with friends. She said that she relies on her children to cook, clean and shop. She scored 23/30 on the MMSE. She did have deficits in arithmetic and spelling skills and in short term and working memory but there was no evidence of neurocognitive dysfunction. Her verbal processing and or focusing were also suspect of being problematic. [Jones] reported that she performs personal care independently. She said that she shops with her son and they also help her cook and clean. She goes for a short walk with her son. She said that her sleep is terrible. She reported difficulty with focusing and therefore does not watch television. Dr. Arnheim opined that [Jones] is limited by auditory hallucinations, withdrawal from others, limitations in processing and following instructions, feelings of worthlessness, hand tremors and somatic ailments which interfere with her mobility. Dr. Arnheim diagnosed [Jones] with major depressive disorder, PTSD, unspecified anxiety disorder, benzodiazepine use disorder, learning disorder by history but he offered no workplace limitations (Ex. 31F). *The assessment is persuasive and consistent with the record based on an examination of [Jones]. [Jones] was able to perform simple instructions which is consistent with the record.*

R. 30–31 (emphasis added). The ALJ thus found Dr. Arnheim's opinion was supported by the examination Dr. Arnheim conducted, and the ALJ found the opinion consistent "with the record." R. 31.

The ALJ erred in assessing both the supportability and consistency of Dr. Arnheim's opinion. Regarding supportability, the ALJ simply concluded, without analyzing the evidence or data that supported Dr. Arnheim's opinion, that Dr. Arnheim's examination substantiated his

---

contracture" based on the CDI Report). In other words, the ALJ found the CDI Report more persuasive than the other evidence in the record. The Court cannot, as Jones implicitly requests, reweigh this "conflicting evidence … or substitute its judgment for that of the agency." *Hultz v. Bisignano*, 162 F.4th 111, 120 (4th Cir. 2025) (citation omitted). Thus, based on the CDI Report, substantial evidence supports the ALJ's consistency finding regarding Dr. Reddy's opinion.

views. In evaluating consistency, the ALJ committed the same mistake by concluding, without citing anything in the record, that one of Dr. Arnheim's conclusions was consistent with the record. The Court cannot fulfill its duty to determine whether the ALJ's evaluation is supported by substantial evidence based on these conclusory findings. This was erroneous.

The ALJ's errors in evaluating Dr. Reddy's and Dr. Arnheim's opinions are not harmless. "Remand is warranted when an ALJ fails to properly consider the supportability and consistency of a medical opinion." *Cody C. v. Bisignano*, Civil Action No. EA-24-3739, 2025 WL 3077642, at *4 (D. Md. Nov. 4, 2025); *Lauren*, 2025 WL 754522, at *5 (collecting cases). This is because the ALJ's missing analysis "prevents, or at least substantially hinders, judicial review" of the ALJ's findings. *Drumgold*, 144 F.4th at 605 n.9 (citation omitted). Additionally, had the ALJ properly considered the opinions, he "may have come to a different determination of the weight [they] should have been given. This revised weight could have, in turn, altered [Jones's] RFC." *Charles H. v. Kijakazi*, Civil Action No. BAH-22-3331, 2023 WL 5984150, at *4 (D. Md. Sept. 14, 2023). Accordingly, the Court remands this case for further review.

On remand, the ALJ should explain how he considered the supportability of Dr. Reddy's medical opinion and the supportability and consistency of Dr. Arnheim's medical opinion pursuant to 20 C.F.R. §§ 404.1520c, 416.920c. As to the arguments Jones raised that the Court did not address, the ALJ is welcome to consider these arguments on remand. The Court expresses no opinion as to whether the ALJ's ultimate conclusion regarding Jones's entitlement to benefits is correct.

## CONCLUSION

Pursuant to sentence four of 42 U.S.C. § 405(g), the Social Security Administration's judgment is REVERSED due to inadequate analysis. The case is REMANDED for further proceedings in accordance with this opinion.

Date: July 2, 2026

                                              /s/

Chelsea J. Crawford
United States Magistrate Judge